Ronnie **EASLEY**

v.

**NORTHERN SHIPPING COMPANY.**

Civ. A. No. 81–2449.

United States District Court,
E.D. Pennsylvania.

Oct. 4, 1984.

Garnita M. Selby, Philadelphia, Pa., for plaintiff.

Goncer M. Krestal, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Northern Shipping Co.

### FINDINGS OF FACT and CONCLUSIONS OF LAW.

SHAPIRO, District Judge.

### FINDINGS OF FACT

1. Defendant Northern Shipping Company ("Northern") operates a stevedoring and terminal service at 7777 State Road in Philadelphia, Pennsylvania and employs in excess of 75 employees.

2. Northern operates a maintenance department at its facility. Maintenance work is primarily performed in the Company's machine shop and in the Company's warehouse. Peter Bushman ("Bushman") has been the maintenance foreman since January 3, 1975.

3. The employees who work in Northern's maintenance department are classified as maintenance helpers, second class mechanics, first class mechanics, electricians and painters.

4. Plaintiff Ronnie Easley is a black male employed by Northern as a first class mechanic.

5. Plaintiff was first employed by Northern on April 19, 1977 as a forklift operator and was assigned to the warehouse.

6. During plaintiff's employment in the warehouse, he was neither issued any warnings nor subjected to any disciplinary actions.

7. Plaintiff began working in Northern's maintenance department on August 28, 1978 and was assigned to the machine shop upon the recommendation of the defendant's President, Jack Rose. Plaintiff was classified as a maintenance helper.

8. Plaintiff was promoted to the position of second class mechanic by defendant on September 25, 1978.

9. Plaintiff was promoted to the position of first class mechanic by defendant on December 13, 1978.

10. Throughout his employment in the machine shop, plaintiff was supervised by Bushman, a white male.

11. Since December, 1978, the Company has regularly employed four first class mechanics, including plaintiff. The other first class mechanics have been Louis Montuoro, Arthur Santos and Guillermo Moreno.

12. Since December, 1978, plaintiff has been the only black first class mechanic in defendant's machine shop.

13. Northern's hourly employees, including plaintiff and the other employees who worked in the maintenance department, were represented for purposes of collective bargaining by the Northern Metal Company Employees' Association ("Association") from July 1, 1979 until approximately October 5, 1980. Northern and the Association were parties to a collective bargaining agreement ("Association Agreement"), effective July 1, 1979.

14. Since approximately October 6, 1980, Northern's hourly employees, including plaintiff and the other employees who worked in the maintenance department, have been represented for the purposes of collective bargaining by Warehouse Employees' Union Local 169 ("Local 169"). Northern and Local 169 were parties to a collective bargaining agreement ("Local 169 Agreement"). Plaintiff was a shop steward for Local 169.

15. The Company's supervisors were responsible for assigning overtime work. Since January 13, 1975, Bushman has been responsible for assigning overtime work to Northern's employees who work in the maintenance department.

16. Between January, 1975 and December, 1980, Bushman assigned overtime work to the first class mechanics based on his personal assessment of their relative ability to perform the assigned work tasks.

17. In the Fall of 1980, representatives of Local 169, including plaintiff, approached Company representatives and requested that the method of assigning overtime be changed. The Union requested that overtime assignments for maintenance employees be made on a rotation system.

18. Commencing in the Fall of 1980, the Company implemented a rotation system for the assignment of overtime for maintenance department employees. Under this rotation system, all overtime was assigned in turn. After an employee was offered overtime work, he would be put to the bottom of the overtime rotation list and would not be offered overtime work again until all other first class mechanics had been offered the opportunity for overtime work. The rotation system implemented in December, 1980 applied to all overtime work.

19. In October, 1982, representatives of Local 169, and the employees who worked in the maintenance department, requested that the Company modify the rotation system. The Union and the employees requested that there be separate rotations for weekday and weekend overtime assignments. Commencing in October, 1982 the Company modified the overtime rotation system to include separate rotation systems for weekday and weekend work.

20. Since the first rotation system was implemented in December, 1980, the Company has consistently made overtime assignments based on the rotation system. Where, however, it was determined that the individual employee was not qualified to perform a certain overtime assignment, another employee was assigned to perform that overtime.

21. Article VII, Section 1 of the Association Agreement, which became effective July 1, 1979, states:

When it becomes necessary to work overtime, such overtime shall be divided as equally as possible among the employees involved.

22. Article XI, Section 11.3 of the Local 169 Agreement states, in relevant part, that:

Overtime shall be distributed according to classifications as heretofore *on the basis of skill and ability* and divided as equally as possible among the employees within the classification, starting with the most senior employee. (Emphasis added)

23. In 1979, plaintiff began regular complaints to Bushman regarding failure to assign him overtime work equal to the other first class mechanics.

24. Overtime hours worked by Easley and the other first class mechanics were as follows:

|      | Easley | Montuoro | Santos | Moreno |
|------|--------|----------|--------|--------|
| 1979 | 494.00 | 544.25   | 559.75 | 742.50 |
| 1980 | 350.00 | 403.00   | 626.00 | 793.00 |
| 1981 | 441.50 | 342.25   | 492.00 | 538.75 |

Defendant's Exhibits 31, 33, 36.

25. The total number of days each first class mechanic was unavailable for overtime work:

|      | Easley | Montuoro | Santos | Moreno |
|------|--------|----------|--------|--------|
| 1979 | 54.00  | 6.00     | 20.00  | 9.00   |
| 1980 | 155.00 | 67.50    | 8.50   | 17.50  |
| 1981 | 17.00  | 85.00    | 6.00   | 6.00   |

Defendant's Exhibits 32, 34, 37.

26. Maintenance department employees were not required to work overtime. Employees lost the opportunity to work overtime if they refused an assignment or were absent at the time that overtime was assigned. An employee who was absent because of sickness, injury, disciplinary suspension, vacation, or for any other reason, would not be assigned overtime for the day, or days, they were absent from work.

27. Plaintiff has refused overtime work on approximately four occasions during his employment as a first class mechanic.

28. On at least one occasion, Bushman assigned plaintiff overtime work only to call him at home and cancel the assignment in favor of another first class mechanic.

29. Plaintiff was assigned 91.125 less hours of overtime in 1979 and 193 less hours in 1980, a total of 284.125 less hours of overtime than the average of all first class mechanics in 1979 and 1980. In 1981, plaintiff was assigned only 12.125 less hours than the average of all first class mechanics. Even allowing for the difference in days unavailable for overtime, it is clear that changing to a rotation system increased the overtime hours assigned to Easley in comparison to other first class mechanics.

30. Plaintiff was assigned less overtime than the average of all first class mechanics throughout the relevant period of his employment as a first class mechanic. After the effective date of the negotiated rotation system, the disparity in overtime hours was the result of a non-discriminatory system.

31. Plaintiff's rate of pay as a first class mechanic was as follows:

(a) December, 1978 –June, 1979     $5.75 per hour
(b) July, 1979 –March, 1980     $6.35 per hour
(c) April, 1980 –June, 1980     $6.65 per hour
(d) July, 1980 –December, 1980     $7.25 per hour

32. In addition to being a mechanic, plaintiff was a welder and forklift operator.

33. Plaintiff has been held to stricter compliance with rules regarding clocking in and out and observing lunch times than other first class mechanics.

34. Plaintiff has used vulgar, abusive language toward Bushman but there was sometimes provocation; Bushman was not intimidated by it. The language was similar to if somewhat stronger than the profanity used by Bushman. Bushman's vulgar language was unfortunately common in the workplace but not racially discriminatory.

35. Between 1979 and January 20, 1982, plaintiff was issued approximately ten warning notices.

36. Guillermo Moreno is the only other first class mechanic who was issued a warning notice by Bushman. Moreno received one notice.

37. Between 1979 and January 20, 1982, plaintiff filed approximately eight grievances protesting disciplinary actions taken against him by Bushman.

38. The Association Agreement contained a grievance procedure. The grievance procedure was contained in Article IX of the Association Agreement. The Association Agreement provided that an employee, through the Union, could arbitrate any complaint, dispute or grievance which arose under the contract.

39. The Local 169 Agreement contains a grievance and arbitration procedure. The grievance and arbitration procedure is contained in Articles XVI and XVII of the Local 169 Agreement. Under the Local 169 Agreement, the Union can arbitrate any grievance concerning the meaning of, application of, or compliance with the terms of the Agreement.

40. Bushman's suspensions of plaintiff were overturned following grievance hearings.

41. Bushman fired plaintiff on October 24, 1980, and on January 20, 1982. The former firing was overturned following a grievance hearing. The latter firing was overturned following a hearing before an arbitrator of the American Arbitration Association.

42. On June 6, 1980, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In his charge of discrimination, plaintiff alleged that the other first class mechanics were permitted to work more overtime hours than he was. Plaintiff also alleged that the Company issued him warning notices and did not issue other mechanics such warning notices.

43. The EEOC deferred the investigation of plaintiff's charge of discrimination

to the Philadelphia Human Relations Commission ("PHRC").

44. After investigating plaintiff's charges, PHRC, on April 21, 1981, notified the parties that plaintiff's charge was being dismissed with a finding of "Charge Not Substantiated."

45. On March 19, 1981, the EEOC issued plaintiff a notice of right to sue letter.

46. This action was commenced by plaintiff on June 17, 1981.

## DISCUSSION

This action was brought pursuant to 42 U.S.C. § 2000e for alleged racial discrimination. Plaintiff claims that his employer, Northern, has discriminated against him in three respects: 1) plaintiff was granted significantly less overtime work than white first class mechanics employed by defendant; 2) plaintiff was disciplined more frequently and more harshly than the other white first class mechanics; and 3) plaintiff's supervisor, Peter Bushman, verbally abused and harassed him.

Plaintiff had the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once a *prima facie* case has been shown, the burden shifts to defendant to articulate some non-discriminatory reason for the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Lewis v. University of Pittsburgh*, 725 F.2d 910, 914 (3d Cir.1983). If such a facially legitimate reason is proffered, plaintiff then bears the burden of demonstrating that the reason given by defendant is merely a pretext. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs*, 450 U.S. at 253, 101 S.Ct. at 1093–94. In a disparate treatment case, the plaintiff must prove that such treatment was caused by purposeful or intentional discrimination.

"[P]roof of discriminatory motive is critical although it can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854, 1855 n.15, 52 L.Ed.2d 396 (1977), *quoting Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977).

■ Plaintiff established a *prima facie* case by showing that he belonged to a racial minority, that he was assigned less overtime hours than other first class mechanics because of his race and that he was subjected to racial discrimination with respect to terminations, suspensions, warnings and other disciplinary actions.

Plaintiff has sustained his burden of proving that he was treated differently from the other white first class mechanics with respect to overtime hours in 1979 and 1980, prior to Northern's implementation of a rotation system in December, 1980. Northern's records demonstrate that plaintiff was assigned 289 hours less overtime than the average of all first class mechanics. (Defendant's Exhibits 31 and 33). Northern asserts that there was a legitimate non-discriminatory reason for the disparity in assignment of overtime work. It claims that plaintiff was assigned fewer overtime hours because he was continually absent when overtime work was assigned because of sickness and disciplinary suspensions. It also contends that plaintiff refused overtime work on numerous occasions.

The reasons offered by defendant for the disparity in treatment with respect to overtime are rejected. Even allowing for the differences in days unavailable for overtime, it is evident that plaintiff was assigned significantly less overtime hours than the other first class mechanics. In 1981, after Northern had instituted a neutral rotation system that did not involve Bushman's discretion, plaintiff's overtime

hours compared favorably to those of other first class mechanics.

Plaintiff has also contended that he was discriminated against with respect to terminations, suspensions, warnings and other disciplinary actions. Plaintiff claims that he was disciplined more harshly than the other first class mechanics for committing infractions of Company rules; he was held more strictly to the rules requiring clocking in and out and observing exact lunch hours than other first class mechanics. For example, Bushman took no disciplinary action against an employee who displayed and fired a gun on Company property. Plaintiff, on the other hand, was given a three-day suspension for being absent from his assigned work area without the foreman's permission, a much less serious offense. (Defendant's Exhibit 3).

Defendant contends that plaintiff created greater disciplinary problems than the other first class mechanics, that he had been provocative and aggressive and had used abusive language towards Bushman. The court has considered the non-discriminatory reasons offered by defendant for the severity of discipline imposed upon plaintiff and it has rejected them. There is no doubt that plaintiff was occasionally aggressive or hostile in language and attitude towards Bushman. Bushman may also have resented plaintiff because he did not personally select him to come to the shop from the warehouse and because he was a young leader and a Union shop steward. However, even considering all of these factors, the court concludes that Bushman would not have treated plaintiff as he did but for his race.

During plaintiff's employment at the warehouse prior to his transfer to the machine shop, no disciplinary actions had been taken against him. It was only under the direction of Bushman that disciplinary problems arose. Moreover, Easley's father, a long-time respected employee of Northern, had warned the President of the Company, Jack Rose, that Bushman and the plaintiff would have problems. Bushman claimed that he was not prejudiced against plaintiff because of his race and that he never discriminated against him. Although it may be true that Bushman never consciously or maliciously acted in a discriminatory fashion, nonetheless it is clear that he over-reacted to plaintiff and did in fact discriminate by reason of plaintiff's race.

■ Plaintiff's third contention, that Bushman verbally abused and harassed him in a racially discriminatory fashion, has not been substantiated. The fact is that plaintiff's language towards Bushman was just as strong, if not stronger, than the profanity used by Bushman. Bushman has contended that he felt threatened by plaintiff's abusive language. It is impossible to believe, however, that Bushman, with the language that he himself used, took plaintiff's threatening remarks seriously or for other than what they were—curse words. Both plaintiff and Bushman need to curb their abusive language but plaintiff has not proven that Bushman's language was in fact racially discriminatory or motivated by racial discrimination.

■ The court has determined that plaintiff is entitled to an award in an amount equal to the number of overtime hours lost due to discrimination. Neither of the parties has offered the usual statistical analysis of the deviation of the overtime hours worked by plaintiff from the overtime hours worked by the other first class mechanics. Plaintiff has submitted as the appropriate measure of damages the discrepancy of plaintiff's overtime hours from the average of all first class mechanics' overtime hours. The court has accepted this method as fair under the circumstances. In calculating damages, the court has made the simplifying assumption that plaintiff lost an equal number of overtime hours in each month. Using this assumption, plaintiff's damages are calculated as follows:

| | | |
|---|---|---|
| January-June, 1979 | 45.56 hours x $ 8.63 | = $ 393.20 |
| July-December, 1980 | 45.56 hours x $ 9.52 | = $ 434.00 |
| January-March, 1980 | 54.09 hours x $ 9.52 | = $ 514.90 |
| April-June, 1980 | 54.09 hours x $ 9.98 | = $ 539.80 |
| July-November, 1980 | 90.15 hours x $10.88 | = $ 980.80 |
| | | TOTAL $2,862.70 |

Although plaintiff has proven that he was subjected to actionable racial discrimination with respect to disciplinary actions, he has submitted no evidence of the amount of back pay or benefits lost as a consequence of this discrimination. Therefore, plaintiff will be awarded nominal damages of $1 in addition to his award for lost overtime hours.

In conclusion, it should be noted that Northern might have avoided this difficult situation had it been more sensitive to racial relations at its facility. The President of the Company had been warned of Bushman's tendency to over-react to young blacks and yet did nothing to ease the tensions between Bushman and the plaintiff. The Company needs to become more sensitive to the potential for racial tensions between its employees and to take affirmative action with the help of expert consultants to improve interpersonal relationships and morale at its facility.

Any additional facts stated in this discussion are specifically adopted as findings of fact.

## CONCLUSIONS OF LAW

1. Plaintiff claims that Northern discriminated against him because of his race and bases his claims on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The court has personal jurisdiction over the parties and subject matter jurisdiction under Title VII and 28 U.S.C. § 1343(4). Venue is proper in this court.

2. Northern is an employer within the meaning of 42 U.S.C. § 2000e(b).

3. Plaintiff's charge of discrimination has been timely filed.

4. All conditions required for the institution of this lawsuit have been satisfied.

5. Plaintiff has met his burden of proving a violation of Title VII.

6. Plaintiff was subjected to actionable racial discrimination with respect to overtime work and pay prior to the institution of the rotation system for assigning overtime.

7. Under Title VII, 42 U.S.C. § 2000e, plaintiff is entitled to back pay for lost overtime prior to December, 1980 in the amount of $2,862.70, calculated as follows:

| | | |
|---|---|---|
| January-June, 1979 | 45.56 hours x $ 8.63 | = $393.20 |
| July-December, 1980 | 45.56 hours x $ 9.52 | = $434.00 |
| January-March, 1980 | 54.09 hours x $ 9.52 | = $514.90 |
| April-June, 1980 | 54.09 hours x $ 9.98 | = $539.80 |
| July-November, 1980 | 90.15 hours x $10.88 | = $980.80 |

8. Plaintiff was subjected to actionable racial discrimination with respect to disciplinary actions but has proved no loss of pay or benefits as a consequence.

9. Under 42 U.S.C. § 1981, plaintiff is entitled to nominal damages in the amount of $1.00 and reasonable attorneys' fees.

10. Plaintiff was not subjected to racial discrimination with respect to harassment and verbal abuse.

11. Plaintiff is entitled to judgment in the amount of $2,863.70 plus such reasonable attorneys' fees as shall be approved by the court.